# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JEANNIE CHILDERS,                    )
                                     )
              Plaintiff,             )
                                     )
      v.                             )          1:09CV225
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social               )
Security,                            )
                                     )
              Defendant.             )

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jeannie Childers, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Act. The Court has before it the certified administrative record and the parties have filed cross-motions for judgment.

### PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on December 31, 2003, alleging a disability onset date of August 1, 1998. (Tr. 15.)[1] Her application was denied initially and upon reconsideration. (Tr. 41-44, 47-49.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 15.) At the

---

[1] Transcript citations refer to the administrative record.

hearing on April 16, 2007, Plaintiff appeared, along with her husband, her attorney, and a vocational expert ("VE"). (Id.) The ALJ found Plaintiff not disabled under the Act (Tr. 29) and the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion Defendant's final decision (Tr. 5-8).

In rendering this disability determination, the ALJ made the following findings later adopted by Defendant:

> 1. The claimant met the insured status requirements of the Social Security Act through December 31, 2002. . . .
>
> 2. The claimant has not engaged in "substantial gainful activity" since August 1, 1998, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.). The claimant has worked during the period subsequent to her alleged onset date. The record clearly shows that she has been involved at least on a part-time basis in a family owned business printing T-shirts for schools and businesses. She has indicated that she has continued to help her husband operate the business at a local flea market.
>
> 3. The claimant has the following severe impairments: fibromyalgia, cervical stenosis, degenerative disc disease of the thoracic spine, fibromyalgia [sic], depression, anxiety and chronic pain (20 CFR 404.1520(c) and 416.920(c)).
>
>     . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for "light" work but would need a job with a sit/stand option in a non-production setting that requires the performance of only simple, routine, repetitive tasks.

(Tr. 17, 23.)

-2-

Given the finding regarding residual functional capacity ("RFC") and the VE's testimony, the ALJ determined that Plaintiff did not have a "disability" under the Act, from her alleged onset date through the date of the decision. (Tr. 28.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the

-3-

case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting the issue so framed, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u>

(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating long-standing medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' ['SEP'] to determine whether a claimant is disabled." Id. (internal citations omitted).

The SEP has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform his [or her] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (1999).[3] A finding against the claimant on steps one or two results in a ruling of no disability. In other words, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely'

---

[2] "The statutory definitions and the regulations . . . for determining disability [for purposes of DIB and SSI] are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

disabled. If not, benefits are denied." Bennett v. Sullivan, 917
F.2d 157, 159 (4th Cir. 1990).

On the other hand, if the claimant prevails on each of the
first three steps, "the claimant is disabled." Mastro, 270 F.3d at
177. Alternatively, if a claimant clears steps one and two, but
falters at step three, i.e., "[i]f a claimant's impairment is not
sufficiently severe to equal or exceed a listed impairment, the ALJ
must assess the claimant's [RFC]." Id. at 179.[4] Step four then
requires the ALJ to assess whether, given the RFC, the claimant can
"perform past relevant work"; if so, the claimant has no
disability. Id. at 179-80. However, if the claimant proves
inability to resume prior work, the analysis proceeds to the fifth
step, where the ALJ must decide if the claimant can "perform other
work considering both [the RFC] and [the claimant's] vocational
capabilities (age, education, and past work experience) to adjust
to a new job." Hall, 658 F.2d at 264-65. If the Commissioner
cannot carry the "evidentiary burden of proving that [the claimant]

_____

[4] "RFC is a measurement of the most a claimant can do despite
[the claimant's] limitations." Hines, 453 F.3d at 562 (noting that
regulations require RFC to reflect claimant's "ability to do
sustained work-related physical and mental activities in a work
setting on a regular and continuing basis [which] . . . means 8
hours a day, for 5 days a week, or an equivalent work schedule"
(internal emphasis and quotation marks omitted)). The RFC includes
both a "physical exertional or strength limitation" that assesses
the claimant's "ability to do sedentary, light, medium, heavy, or
very heavy work," as well as "nonexertional limitations (mental,
sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to
be determined by the ALJ only after [the ALJ] considers all
relevant evidence of a claimant's impairments and any related
symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

## Assignments of Error

The ALJ found that, despite Plaintiff's occasional part-time work, she had not engaged in "substantial gainful activity" since her alleged onset date and thus carried her burden at step one. (Tr. 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: fibromyalgia, cervical stenosis, degenerative disc disease of the thoracic spine, depression, anxiety, and chronic pain. (<u>Id.</u>) Although the ALJ decided at step three that Plaintiff's impairments did not meet or equal a disability listing, the ALJ thereafter concluded that Plaintiff only could do light work with further limitations and thus ruled at step four that Plaintiff lacked the capacity to return to her past relevant work. (Tr. 17, 23.) However, the ALJ concluded at step five that Plaintiff could perform other available jobs, such that she did not have a disability. (Tr. 23.)

Plaintiff now attack the ALJ's findings at step three and in the RFC formulation, in that:

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not end the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

1) at step three, the ALJ failed to evaluate whether Plaintiff met or equaled listings "for lumbar issues (Listings in 1.00) and mental issues (Listings in 12.00)" (Docket Entry 11 at 4); and

2) in formulating Plaintiff's RFC (prior to resolving step five against Plaintiff), the ALJ erroneously decided that Plaintiff "can perform a limited range of light work . . . because [the ALJ] failed to explain his rationale" (id. at 6), neglected to consider Plaintiff's fatigue and obesity (id. at 6, 8), and discounted the opinion of a treating physician (id. at 8).

1.    **Step Three Determination**

According to Plaintiff, "[t]he ALJ's failure to explain what listings he considered or how he reached the conclusion that [Plaintiff] did not meet or equal a listing requires that this case be remanded for further consideration by the ALJ."  (Id. at 5.) "In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met."  Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986).  More specifically, when an ALJ finds that a claimant has a severe impairment and the record contains evidence of related "symptoms [that] appear to correspond to some or all of the requirements of [a listing] . . . [the ALJ must] explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment."  Id.  Plaintiff asserts that "[t]here are several listings that apply in this case and should have warranted

-8-

evaluation, including those for lumbar issues (Listings in 1.00) and mental issues (Listings in 12.00)." (Docket Entry 11 at 4.) Plaintiff neither has further specified what listings she allegedly met nor has cited any evidence of "symptoms [that] appear to correspond to some or all of the requirements of [any listing]," Cook, 783 F.2d at 1172. (See id. at 4-5.)

The ALJ determined that Plaintiff had two severe spine-related impairments, cervical stenosis and degenerative disc disease of the thoracic spine. (Tr. 17.)[6] Of the "Listings in 1.00" (to which Plaintiff made general reference (Docket Entry 11 at 4)), only Listing 1.04 concerns "[d]isorders of the spine," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04, and it specifically encompasses Plaintiff's two severe spine-related impairments, see id. (giving "spinal stenosis" and "degenerative disc disease" as examples of "[d]isorders of the spine"). Listing 1.04 requires proof that the spine disorder has "result[ed] in compromise of a nerve root (including the cauda equina) or the spinal cord" and:

> A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysthesia,

_____

[6] Plaintiff has not argued on appeal that she has any other severe spine-related impairments. (See Docket Entry 11 at 4-8.)

-9-

resulting in the need for changes in position or posture more than once every 2 hours; or

C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Id.

In her challenge to the ALJ's step-three decision, Plaintiff has failed to identify any evidence that even arguably would satisfy these requirements. (See Docket Entry 11 at 4-5.) Moreover, Plaintiff has acknowledged that "[t]he ALJ listed the medical evidence in great detail" (Docket Entry 11 at 5 (citing Tr. 18-23)), but the ALJ's findings about the state of the evidence do not support the position that Plaintiff's spine disorders resulted in either nerve root or spinal cord compromise or any symptoms in paragraphs (A), (B), or (C) of Listing 1.04. (See Tr. 18-23.)

The ALJ also concluded that Plaintiff had two severe mental impairments, depression and anxiety. (Tr. 17.)[7] The "Listings in 12.00" (to which Plaintiff generally referred (Docket Entry 11 at 4)) address these two mental impairments in Listing 12.04 and Listing 12.06, respectively. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04 (pertaining to "Affective Disorders: Characterized by a disturbance of mood . . . generally involv[ing] either depression or elation"), 12.06 (encompassing "Anxiety Related Disorders").

---

[7] Plaintiff has not argued on appeal that she has any other severe mental impairments. (See Docket Entry 11 at 4-8.)

To satisfy Listing 12.04, a claimant, inter alia, must show:

[A]t least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or . . . one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.[8]

The requirements of Listing 12.06 similarly include either "complete inability to function independently outside the area of one's home" or "at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked

---

[8] To qualify as "marked," a limitation must "interfere seriously with [one's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). Decompensation refers to "an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

Plaintiff has failed to point to any evidence that even begins to make out these required showings of "marked" functional limitations, decompensation history or risk, and/or inability to maintain an independent existence. (See Docket Entry 11 at 4-5.) Further, the record evidence as summarized by the ALJ (the thoroughness of which summary Plaintiff has conceded (see id. at 5)) fails to reveal any such level of symptomology associated with Plaintiff's depression or anxiety. (See Tr. 18-23.)

Under these circumstances, the Court should conclude that any inadequacy in the ALJ's explanation of his determination that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (Tr. 23), fails to warrant reversal. See Scott ex rel. Scott v. Astrue, 529 F.3d 818, 822 (8th Cir. 2008) ("As a general rule, [courts] have held that an ALJ's failure to adequately explain his factual findings is not a sufficient reason for setting aside an administrative finding where the record supports the overall determination." (internal citations and quotation marks omitted)); see also Morgan v. Barnhart, 142 Fed. Appx. 716, 723 & n.6 (4th Cir. 2005) (applying harmless error standard in Social Security appeal); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No

-12-

principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").

## 2. RFC Formulation

Plaintiff's remaining assignments of error all involve challenges to the RFC adopted by the ALJ. (See Docket Entry 11 at 5-8.) Specifically, Plaintiff contends the ALJ erroneously decided that Plaintiff "can perform a limited range of light work . . . because [the ALJ] failed to explain his rationale" (id. at 6), neglected to consider Plaintiff's fatigue and obesity (id. at 6, 8), and discounted the opinion of a treating physician (id. at 8). Each of these contentions lacks merit.

### A. Inadequate Explanation

Plaintiff claims that the ALJ failed to explain how the medical evidence supports the RFC determination. (See Docket Entry 11 at 5-6.) RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. 404.1545(b). The ALJ then

-13-

must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). Here, the ALJ determined that Plaintiff could do "'light' work but would need a job with a sit/stand option in a non-production setting that requires the performance of only simple, routine, repetitive tasks." (Tr. 23.) A review of both the decision and the record clearly demonstrates that the ALJ not only supported these RFC findings with substantial evidence but also built "an accurate and logical bridge" connecting the two.

First, the ALJ properly took note that Plaintiff's examining and consultative physicians observed that she suffered very few, if any, objective physical limitations had normal reflexes, a full range of motion, and full strength in her extremities. (Tr. 19-22.) Further, the ALJ's decision thoroughly addresses Plaintiff's exertional and non-exertional limitations in connection with an evaluation of her ability to resume past relevant work:

> As described by [Plaintiff], the job of helper for a T-shirt printer required constant standing and required her

-14-

> to meet production quotas. That job did not provide a sit/stand option. Ms. Hollenbeck, the vocational expert, testified that [Plaintiff's] past job as a sales clerk required "light" physical exertion of a "semi-skilled["] nature. However, [Plaintiff] stated that, on her particular job in retail sales and T-shirt printing, she was on her feet for long periods on a concrete floor and that she lifted bundles of garments weighing up to 40 pounds. She testified that she had difficulty waiting on customers because of her mood disorder and anxiety. In taking the evidence in a light most favorable to [Plaintiff], I will conclude that she is unable to perform her past relevant work on a full-time basis.

(Tr. 27.)

As this and other parts of the decision reveal, the ALJ explicitly resolved ambiguities regarding Plaintiff's capabilities in Plaintiff's favor. The ALJ also tailored specific RFC findings to account for Plaintiff's testimony. For example, despite evidence that Plaintiff could perform medium work with no further exertional limitations, the ALJ determined, based on Plaintiff's claimed inability (1) to lift loads consistent with medium level work and (2) to stand for long periods of time, that she could do only light work with a sit/stand option. (Tr. 23.)[9] In addition, the ALJ addressed Plaintiff's claimed non-exertional limitations by restricting her to work "in a non-production setting that requires the performance of only simple, routine, repetitive tasks." (Id.)

_____

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects up to 25 pounds." 20 C.F.R. § 404.1567(c). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Plaintiff asserted that she had difficulty lifting 30 to 40 pound boxes of T-shirts in her past job. (Tr. 470.)

-15-

In short, the ALJ rendered a decision that permits meaningful judicial review and accurately documents substantial evidence supporting the RFC determination.

## B. Failure to Address Fatigue and Obesity

In addition, Plaintiff argues that the ALJ did not adequately factor her fatigue and obesity into the RFC. (See Docket Entry 11 at 6, 8.) As to fatigue, Plaintiff impliedly asserts that the ALJ should have incorporated into the RFC a restriction that Plaintiff would need to rest for up to half of the work-day. (See id. at 6 (citing Tr. 506).)[10] As support for this assertion, Plaintiff points to her testimony and three medical documents. (See id. (citing Tr. 175, 188, 234, 472-74, 483).)

None of the cited record material supports a finding that Plaintiff experienced fatigue that would require her to rest for half of a work-day. For example, Plaintiff references a doctor's treatment note from 1999 recounting Plaintiff's description of her part-time work at a flea market as follows:

> She works pretty hard on Friday getting ready for the weekend, and then she works extremely hard on Saturday and Sunday . . . [because she] and her husband make their income out of two days a week. Monday is a terrible day - she just tries to rest all day. On Tuesday she is a little better, and by Wednesday she is feeling good. Thursday is her best day.

---

[10] Plaintiff frames her challenge regarding fatigue as an attack on the ALJ's reliance on the VE's testimony. (See Docket Entry 11 at 6.) However, in substance the assignment of error turns on the contention that the ALJ should have included in the RFC a fatigue-based limitation that required resting for up to half a work-day. (See id. (citing Tr. 506).)

(Tr. 175.)  This account indicates that when (in a medium exertional level job (see Tr. 27)) Plaintiff worked more than a normal work-day for two or three consecutive days (i.e., "pretty hard on Friday" and "extremely hard on Saturday and Sunday" (Tr. 175; see also Tr. 19 (observing that medical records showed Plaintiff had reported "that she was required to be on her feet for eight or nine hours each day on her job at the flea market"))), she needed two days of rest (i.e., on Monday and Tuesday (Tr. 175)) before she felt "good" or "her best" (i.e., on Wednesday and Thursday (id.)).

Nothing about this report precludes an inference that Plaintiff could tolerate a normal five-day work-week at a modified, light exertional level.[11]  At a minimum, Plaintiff's citation to this treatment note affords no basis for the Court to conclude that the ALJ should have found that Plaintiff suffered from fatigue so great that her RFC should require an option to rest for up to half of each work-day.  Nor do the other two cited treatment notes which document Plaintiff's report of suspending her flea market work over the summer "because of the heat" (which by the end of the weekend left her "exhausted") (Tr. 188) and the circling of the words "chronic fatigue" on a form-list of symptoms (Tr. 234).

---

[11] In such a job, Plaintiff would not have to work excessive amounts on any day (let alone two consecutive days) and only would have to perform less physically-strenuous tasks in general with a sit/stand option, while retaining the ability to rest for two consecutive days at the end of each work-week.

Further, although in the testimony on which she relies, Plaintiff did aver that "[s]tarting in '98 and '99 . . . [she] ha[d] to rest . . . at least half a day" (Tr. 474; <u>see also</u> Tr. 472-73 (testifying that "starting at least 1998," while doing housework, Plaintiff had to rest "[e]very couple of hours" for periods of "[t]wo or three hours at least")), such averments directly conflict with other record evidence from Plaintiff (including the treatment note quoted above) in which she admits performing medium-level work for extended periods without lengthy breaks during the same time-frame. Based on such contradictions in Plaintiff's accounts of her capacity for sustained work activity, the ALJ (after thorough analysis) found Plaintiff's testimony about the intensity of her symptoms (such as fatigue) not credible. (<u>See</u> Tr. 23-26.) Moreover, Plaintiff has declined to challenge that credibility determination in this appeal. (<u>See</u> Docket Entry 11 at 4-8.) In sum, Plaintiff's citations to her testimony and other records regarding fatigue do not provide a sufficient basis for the Court to invalidate the ALJ's RFC.

Plaintiff also contends that the ALJ should have factored her "diagnosis of morbid obesity" into her RFC. (<u>Id.</u> at 8.)[12] In presenting this argument, Plaintiff has failed to identify anything

---

[12] Although Plaintiff's brief initially couches this assignment of error as a challenge to the failure of the ALJ to characterize Plaintiff's obesity as a "severe" impairment at step two, it acknowledges that the issue ultimately becomes whether the ALJ properly "evaluate[d] [Plaintiff's obesity] in combination with all of the other impairments." (Docket Entry 11 at 8.)

in the record, medical evidence or otherwise, that indicates that
her weight affected her ability to perform basic work activities in
some manner beyond the limits attributable to her other
impairments. (See id.) As a result, Plaintiff's instant claim
lacks merit. See, e.g., Skarbek v. Barnhart, 390 F.3d 500, 504
(7th Cir. 2004) (rejecting remand where plaintiff failed to show
how obesity further impaired ability to work); Miller v. Astrue,
No. 2:06-000879, 2008 WL 759083, at *3 (S.D. W. Va. Mar. 19, 2008)
(unpublished) (same). Moreover, references to Plaintiff's weight
and high body mass index appear throughout her medical records, but
neither her treating physicians nor consultative examiners
attributed any added degree of limitation to these conditions.
(See Tr. 153-63, 191, 227-28, 266-69.) This circumstance provides
an additional reason for the Court to decline to treat the absence
of discussion of Plaintiff's obesity in the ALJ's decision as
reversible error. See, e.g., Skarbek, 390 F.3d at 504; Ross v.
Astrue, No. 1:05CV968, 2008 WL 205213, at *5 (M.D.N.C. Jan. 23,
2008) (unpublished).

### C. Discounting of Treating Physician Opinion

Finally, Plaintiff contests the ALJ's consideration of the
opinion of Dr. Flechas, a treating physician. (Docket Entry 11 at
6-8.) In Plaintiff's view, by declining to accept Dr. Flechas's
conclusion that Plaintiff lacks the ability to sustain work of any
kind, the ALJ failed to give the opinion of a treating source
greater weight than the opinions of a non-treating source as

-19-

required by 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1), better known as the "treating physician rule." (Docket Entry 11 at 6.)

The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, on the ground that treating sources "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The rule also recognizes, however, that not all treating sources or treating source opinions deserve such deference.

First, the nature and extent of each treatment relationship may temper the weight afforded. 20 C.F.R. §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii). Further, a treating source's opinion controls only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2)-(4) and 20 C.F.R. §§ 416.927(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; accord Mastro, 270 F.3d at 178. Finally, opinions regarding the ultimate issue of disability, regardless of source, do not receive controlling weight. See 20 C.F.R. § 404.1527(e).

Here, the ALJ determined that Dr. Flechas's opinion that Plaintiff was "totally disabled from full or part-time work" did not warrant controlling weight because, in addition to addressing an ultimate issue, the conclusion (1) lacked adequate support of objective medical evidence and (2) ran contrary to substantial evidence in the record. (See Tr. 22, 23, 25, 27.) In fact, the ALJ's decision thoroughly and properly applies all the factors set out in 20 C.F.R. § 404.1527(d)(2) in describing why the ALJ refused to "assign great weight to statements in the file by Dr. Flechas concerning the claimant's inability to work." (Tr. 27.)

In this regard, the ALJ's decision notes that, although Plaintiff saw Dr. Flechas approximately every three months from May 2000 until her hearing in 2007, the visits occurred primarily "for prescription refills . . . [and Dr. Flechas] has not performed objective evaluations of the claimant to support a determination of disability." (Tr. 22.) Moreover, the ALJ observed that Dr. Flechas "supplied only scant treatment notes . . . covering the period from April 2001 to January 2007." (Id.) The ALJ's decision also highlights Dr. Flechas's status as a general practitioner, rather than a specialist, as well as the inconsistency between his opinion and other medical opinions, objective medical data, and the record as a whole, including the testimony of Plaintiff and her husband. (Tr. 27.)

Plaintiff's continued work at a flea market long after her alleged onset date, documented throughout the record (including in

-21-

Dr. Flechas's own treatment notes) (see, e.g., Tr. 170, 177, 180, 245, 255), represents the most significant evidentiary conflict. Because Dr. Flechas failed to reconcile his statement that Plaintiff cannot hold even a part-time job with his admitted knowledge that Plaintiff continued to work at the flea market while under his care, the ALJ reasonably discounted Dr. Flechas's opinion. (Tr. 20.) Records of Plaintiff's daily activities, which include three to four hours of housework, grocery shopping, caring for her daughter, and managing her family's finances, further support the ALJ's decision in this regard. (Tr. 26.)

As Defendant correctly recounts, the relevant medical evidence also fails to support a finding of total disability:

> It is important to note that the majority of the objective medical evidence available to Dr. Flechas when he completed his May, 2006 fibromyalgia statement was also before the DDS consultant physicians when they reviewed Plaintiff's records and assessed her RFC. For example, the February 28, 2002 lumbar/thoracic spine MRI showing mild degenerative changes (Tr. 217), the October 16, 2002 lumbar spine MRI showing a "small to moderate sized central disc herniation at the L4-5 level" (Tr. 318), and Dr. Flechas' treatment note of the same date referring to that herniated disc (Tr. 264) all predate the three physicians' RFC assessments. (Tr. 160, 161, 163.) Dr. Pyle and Dr. Mann both referred, in their medical statements, to Dr. Flechas and Dr. Rosner's treatment notes which they had reviewed as part of the RFC assessment process. (Tr. 161, 162.) This indicates that the objective medical evidence on which Plaintiff suggests Dr. Flechas relied as a basis for his medical opinion was subject to more than one interpretation by qualified medical professionals.

(Docket Entry 14 at 16.)

In sum, substantial evidence, both medical and otherwise, amply supports the ALJ's discounting of Dr. Flechas's opinion.

Moreover, the ALJ thoroughly described his reasons for his approach in a manner consistent with all the considerations set out in 20 C.F.R. § 404.1527(d)(2). Plaintiff's challenge on this point thus warrants no relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's motion to reverse the decision of the Commissioner (Docket Entry 10) be **DENIED**, that Defendant's motion for judgment on the pleadings (Docket Entry 13) be **GRANTED**, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

Date: April 16, 2012